UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TIFFANY BULLARD,                          )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )       No. 3:21-CV-254-JEM
                                          )
KILOLO KIJAKAZI,[1]                       )
Acting Commissioner of Social Security,   )
                                          )
            Defendant.                    )

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 14].  Now before the Court are

Plaintiff's Motion for Summary Judgment [Doc. 15] and Defendant's Motion for Summary

Judgment [Doc. 17].  Plaintiff filed a reply brief on January 25, 2022 [Doc. 19].  Tiffany Bullard

("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"),

the final decision of Defendant Kilolo Kijakazi ("the Commissioner").  For the reasons that follow,

the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I.      **PROCEDURAL HISTORY**

On April 27, 2010, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.* [Tr. 76, 106, 148–57].  Plaintiff initially alleged a disability

onset date of September 29, 2008 [*id.* at 76]; however, that date has since been amended to

November 3, 2009 [*Id.* at 1184]. Plaintiff's applications were denied by ALJs in 2011, 2013, and

_____

[1]      Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.  *See* 42 U.S.C. § 405(g).

2016, with remands by either the SSA's Appeals Council or the Court following each denial [*Id.* at 25–41, 73–92, 856–922, 990–1015]. A hearing was most recently held on November 5, 2019 [*Id.* at 752–803]. On February 26, 2020, an ALJ found that Plaintiff was not disabled [*Id.* at 729–51]. The Appeals Council denied Plaintiff's request for review on May 14, 2021 [*Id.* at 722–25], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on July 13, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.  The claimant has not engaged in substantial gainful activity since September 30, 2013, the alleged onset date[2] (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: inflammatory arthritis, fibromyalgia, osteoarthritis, degenerative disc disease in lumbar spine, neuropathy in upper extremities, obesity, affective mood disorder, anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

---

[2]      In the decision, the ALJ mistakenly identified September 30, 2013, as the amended alleged onset date; however, this is the "date last insured" for purposes of Plaintiff's Title II claim [Tr. 732, 736]. As noted above, Plaintiff alleged an amended onset date of November 3, 2009 [*Id.* at 1184]. The Court finds this typographical error contained in the ALJ's findings 2 and 11 are harmless because the ALJ considered evidence pre-dating September 30, 2013, in his decision, as discussed throughout this opinion.

2

the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stand, walk, and sit for 6 hours; frequent pushing/pulling with bilateral upper extremities; frequent use of hand controls; occasional climbing ramps, stairs, ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; limited to simple and lower level detailed tasks but not multi-step detailed tasks and no independent decisions at the executive level; and occasional contact with coworkers, supervisors, and the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 16, 1980 and was 33 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 735–43].

III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference."  *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

4

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

5

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff raises several arguments on appeal. She alleges that the ALJ ignored the Appeals Council's remand order because he: (1) declined to obtain evidence from a medical expert to further evaluate the severity, onset, and limiting effects of her physical impairments and (2) failed to properly evaluate her symptoms. She also claims the ALJ: (3) improperly assessed the opinion evidence of record, as his assessment is premised upon mischaracterizations and improper

6

inferences, and (4) failed to accommodate all of her limitations arising from her combined impairments and within the context of a full-time work setting within the final RFC finding. The Commissioner maintains that the ALJ (1) did not ignore the Appeals Council's remand order by declining to obtain evidence from a medical expert to further evaluate the severity, onset, and limiting effects of Plaintiff's physical impairments; (2) properly evaluated her symptoms; (3) properly assessed the opinion evidence of record; and (4) crafted a final RFC that accommodated for all of her limitations arising from her combined impairments within the context of a full-time work setting.

For the reasons explained below, the Court finds the ALJ's decision is supported by substantial evidence because he (1) did not ignore the Appeal's Council's remand order by declining to obtain evidence from a medical expert to further evaluate the severity, onset, and limiting effects of Plaintiff's physical impairments; (2) properly evaluated her symptoms; (3) properly assessed the opinion evidence of record; and (4) formulated a final RFC that accommodated for all of her limitations arising from her combined impairments within the context of a full-time work setting. The Court addresses Plaintiff's arguments in the order presented in her brief.

A.    **The Appeals Council's Remand Order and the ALJ's Decision not to Obtain Additional Evidence from a Medical Expert**

On May 24, 2019, the Appeals Council remanded Plaintiff's case after she filed written exceptions to a prior ALJ decision dated February 25, 2016 [Tr. 1010–14, 1143–58]. The remand order contained several directives, including that, upon remand, the ALJ must:

> Update the record as needed pursuant to 20 CFR 404.1512 and 416.912. Given the complex nature of the claimant's impairments, the Administrative Law Judge *may* obtain evidence from a medical expert to further evaluate the severity, onset, and limiting effects of

7

the claimant's physical impairments, particularly rheumatoid arthritis.

[*Id.* at 1013 (emphasis added)].

Plaintiff argues that, "given the remote nature of much of the medical evidence, the ALJ's cursory characterization of records from [her] rheumatologist and pain management physician begs for qualified medical interpretation and clarification" [Doc. 16 p. 11]. She claims the ALJ ignored the Appeals Council's remand order and the law because he justified his finding that her symptoms related to her rheumatoid arthritis ("RA") were not disabling by improperly suggesting that there was evidence of improvement in her symptoms with medication [*Id.*].

Plaintiff acknowledges that the ALJ "has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary," however, she asserts that "the suggestion in the [Appeals Council's] remand order that such additional testing or testimony would be [warranted] indicates that the ALJ's failure to obtain any [such evidence] is an abuse of that discretion" [*Id.* (citing 20 C.F.R. §§ 404.1517, 416.917; *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001))]. She contends that, in *Foster*, there was sufficient medical source evidence contained within the record for the ALJ to make an appropriate disability determination but that the same cannot be said here [*Id.*]. Plaintiff argues the ALJ "cherry-picked" through the medical records from her rheumatologist Sivalingam Kanagasegar, M.D. ("Dr. Kanagasegar"), and pain management consultant James Choo, M.D. ("Dr. Choo"), to emphasize that her medications provided some relief and improvement for her symptoms, but that, without more, does not adequately address the issue of whether she could endure work-related functional limitations [*Id.* (citing Tr. 736–37)].

8

The Commissioner submits that, contrary to Plaintiff's assertions, the ALJ complied with the Appeals Council's remand order and properly determined that a medical expert was unnecessary [Doc. 18 p. 9]. The Court finds the ALJ's decision conformed to the remand order, and the ALJ appropriately determined that an additional medical expert was unnecessary. Here, the Appeals Council's use of the term "may" afforded the ALJ significant discretion to determine whether additional evidence from a medical expert should be obtained; therefore, his decision not to seek such evidence is not erroneous in and of itself. Plaintiff seems to argue that the Appeals Council's order implicitly directed the ALJ to obtain a medical expert to help further evaluate her case given the complex nature of her impairments and that the record appears to be underdeveloped, at least as to the ALJ's findings pertaining to her manipulative limitations.

This argument is unavailing. Plaintiff contends this case is unlike *Foster* because, here, there was not sufficient evidence in the record for the ALJ to make his determination [Doc. 16 p. 11]. The Court finds the opposite to be true. *Foster* instructs that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster*, 279 F.3d at 355; *see also* 20 C.F.R. §§ 404.1517 and 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." (emphasis added)); *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."). In other words, "solicitation of an expert medical opinion is discretionary." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 562 (6th Cir. Aug. 7, 2014) (citations omitted).

9

The Court finds the ALJ did not abuse his discretion by not seeking additional evidence from a medical expert, as there was sufficient evidence in the record for him to evaluate Plaintiff. *Id.* ("[T]he ALJ did not abuse his discretion in denying a request for additional expert testimony when there was sufficient evidence in the record for the ALJ to evaluate the claimant.") (citing *Foster*, 279 F.3d at 356). The ALJ had before him for his consideration, among other things, the objective medical evidence, treatment records, evidence of Plaintiff's improvement on medications, her reported daily activities, and the medical opinions.

### 1. Objective Medical Evidence

Plaintiff contends that the ALJ's review of and reliance on the objective medical evidence was flawed in this case. For example, she states that "a more fulsome and even-handed review of the records of both treating specialists reveal chronic pain and fatigue that results in significant limitations, particularly with regard to [her] ability to use her hands on a sustained basis" [Doc. 16 p. 11]. Moreover, in June 2010, Dr. Kanagasegar noted subacute pain in both hands and pain being present most of the time, with it sometimes being accompanied by significant joint swelling [*Id.* (citing Tr. 351)].

In July 2010, after she had been started on medication, she reported that she had experienced "increasing pain after stopping the Prednisone" [*Id.* at 11–12 (quoting Tr. 352)]. At that time, Plaintiff did not believe her methotrexate was helping at all, she noticed more tiredness for the last few weeks, and she was having pain in the hands, wrists, shoulders, knees, and ankles, resulting in Dr. Kanagasegar increasing her methotrexate prescription [*Id.* at 12 (citing Tr. 349–50)]. In February 2012, she continued to report increased pain in her hands, wrist, and shoulders, and Dr. Kanagasegar noted he had prescribed sulfasalazine, which she took for one month, and he had also discussed humira, but she was very upset about the side effects and did not come for a

10

follow up visit [*Id.* (citing Tr. 581)]. He further noted that, for the last two weeks, Plaintiff had noticed increasing pain in her hands, and because of pain and swelling, she had difficulty making a fist and performing day-to-day activities [*Id.* (citing same)]. Dr. Kanagasegar found that, by October 2012, her joint symptoms were fairly stable, she experienced pain in very cold weather, she was still taking kadian twice a day and occasionally oxycodone, and she though methotrexate and sulfasalazine were helping [*Id.* (citing Tr. 589)].

The Court finds that the ALJ appropriately considered the objective medical evidence when evaluating Plaintiff's physical impairments in this case and further that the objective medical evidence was not as lacking as she alleges [Tr. 736–37, 740]. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, have on your ability to work."). As an example, the ALJ noted that Dr. Kanagasegar examined Plaintiff in 2010 for RA, and he concluded that she likely had seronegative RA [Tr. 349–50, 736]. During Jeffrey Uzzle, M.D.'s ("Dr. Uzzle") consultative examination in July 2010, he noted synovitis and inflammation in several joint both hands, a slightly reduced (4/5) grip strength in both hands, and mild joint changes and limitations [*Id.* at 341, 736, 741]. A 2016 MRI of her lumbar spine showed a mild disc bulge at L4-5 and a slight disc herniation or protrusion at L5-S1 [*Id.* at 736–40, 2004]. In February and July 2018, she had no synovitis or joint deformities on physical exam [*Id.* at 736, 1800, 1811]. July 2018 x-rays of her hands were normal, and x-rays of her feet, SI joints, and knees indicated only mild degenerative changes [*Id.* at 736–37, 740, 1802–08]. The ALJ extensively reviewed the objective medical evidence and appropriately decided that no additional medical expert was required to dispense with Plaintiff's disability claim.

11

### 2.        Plaintiff's Treatment Records

Plaintiff argues that the treatment evidence further evidences the severity of her alleged impairments. Specifically, she described the treatment she received from her pain specialist Dr. Choo, "who, after several years, characterized her impairments as 'chronic polyarticular pain associated with rheumatoid arthritis' in her joints, particularly in her hands and feet" [Doc. 16 p. 12 (quoting Tr. 1939)]. Dr. Choo further noted that comorbidities, including morbid obesity, depression, and hypertension, affected her pain management treatment [*Id.* (citing Tr. 1941)]. In December 2015, he indicated that her medications were helpful but that she continued to experience the same constant, aching, throbbing pain diffusely in the joints [*Id.* (citing Tr. 1893)]. Plaintiff reported that her hands, knees, and toes bothered her more than anything, and it was noted that she had diffuse joint stiffness with intermittent swelling [*Id.* (citing same)]. Her pain worsened with cold weather and with staying in one position for a long period of time, and her pain was at its worst first thing in the morning [*Id.* (citing same)].

The Court finds the ALJ appropriately reviewed and relied upon Plaintiff's treatment records relating to her physical impairments [Tr. 736–37]. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("[W]e will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms."). As stated above, Dr. Uzzle noted in 2010 that Plaintiff's joint changes and limitations were mild [Tr. 342, 736]. An October 2012 treatment note indicated her joint symptoms were "fairly stable" [*Id.* at 589, 736]. Treatment notes in 2018 described Plaintiff as having multiple tender points on examination, and she was diagnosed with fibromyalgia [*Id.* at 737, 1800]. Other treatment notes also indicated she was treated for morbid obesity [*Id.* at 737,

12

1817].  The ALJ expressly considered Plaintiff's treatment records when assessing her impairments, and the Court finds it was appropriate for him to rely on these records as part of his decision.

### 3.    Plaintiff's Improvement with Medication

The Court finds the ALJ properly considered how effective Plaintiff's medications were at controlling her pain and other symptoms [*Id.* at 736–37].  *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (directing consideration to the "type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms").  Plaintiff claims the ALJ's reliance on the fact that Drs. Kanagasegar and Choo acknowledged her medications had been helpful led him to improperly infer that any abatement of her severe symptoms equated with her retaining the ability to function in a full-time work setting [Doc. 16 pp.12–13].  She argues such an inference is unsupported by the record because, over the course of more than ten years, she has been assessed with significant limitations notwithstanding her medication treatment history [*Id.*].

However, Plaintiff reported that her medications were helping manage the pain in her hands in 2011 [Tr. 569, 574, 576, 736].  In 2013 and 2014, she reported that she continued to benefit from medications like humira and methotrexate [*Id.* at 736, 1309, 1312–13, 1315, 1317, 1345, 1348, 1351–52, 1354, 1356].  Treatment notes from her pain management clinic dated January to September 2015 indicated her medications were helpful [*Id.* at 736, 1646, 1743].  In November and December 2015, she continued reporting that medications were helping manage her pain and allowed her to be more active [*Id.* at 736, 1761, 1773].  In 2018, she continued taking xeljanz for her RA [*Id.* at 736, 1800, 1811, 1815].  She reported to her pain management providers in September 2019 that her medications were helping her control her pain and improve in her

13

functioning [*Id.* at 737, 740, 2490].  The Court finds it was appropriate for the ALJ to rely on the reports indicating Plaintiff's medications were helping to control her pain and other symptoms.

### 4.    Plaintiff's Reported Daily Activities

The ALJ also reviewed Plaintiff's reported daily activities when assessing her impairments [*Id.* at 736–37, 739–40].  *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (directing consideration to "[y]our daily activities").  In 2010, she reported that she cooked and used a computer [Tr. 361, 740].  In a 2014 function report, she reported that she prepared meals, did light household chores, and had no problems caring for her personal hygiene, and at an examination that same year, she made similar reports of preparing meals, washing clothes, and caring for her personal hygiene [*Id.* at 738, 740, 1220–21, 1379].  In January and September 2015, Plaintiff told her pain management provider she could do chores, cook meals, and work odd jobs [*Id.* at 736, 1646, 1743].  In May 2019, she reported she could do home chores, cook, and work a customer service job from her home [*Id.* at 740, 2438].  She reported "working full time" in September 2019 [*Id.* at 737, 740, 2490].  Plaintiff testified at the November 2019 hearing that she had returned to work in 2017 and was currently working for CVS/Caremark taking phone calls [*Id.* at 740, 762–64].  She said she worked 8:00 a.m. to 2:30 p.m., five days per week, but she usually averaged four days of work per week [*Id.*].  The Court finds it was appropriate for the ALJ to consider Plaintiff's reported daily activities when assessing her impairments.

### 5.    Opinion Evidence

Finally, the ALJ also evaluated and considered the opinion evidence [*Id.* at 740–42].  *See* 20 C.F.R. §§ 404.1527, 416.927.  The Court provides more detailed findings regarding the ALJ's evaluation of the opinion evidence later in the opinion [*see infra* § (C)] but notes that the ALJ considered, among others, Dr. Uzzle's 2010 consultative opinion; the opinions of state agency

14

physicians Marvin H. Cohn, M.D. ("Dr. Cohn"), and Charles S. Settle, M.D. ("Dr. Settle), who affirmed Dr. Cohn's opinion [Tr. 481]; and the 2014 opinions of state agency physicians Joseph Curtsinger, M.D. ("Dr. Curtsinger"), and Thomas Thrush, M.D. ("Dr. Thrush").

Given the above, the Court finds the ALJ had ample evidence in the record upon which to dispense with Plaintiff's claim. The ALJ reviewed, among other things, the objective medical evidence, her treatment history, the effectiveness of her medications, her reported daily activities, and the opinion evidence of record. As such, there was sufficient evidence relating to her impairments, meaning it was appropriate for the ALJ to not seek additional evidence from another medical expert. *Griffith*, 582 F. App'x at 562. The ALJ did not ignore the Appeal's Council's remand order, as he was given considerable discretion to determine whether additional medical expert evidence should be obtained, particularly as to Plaintiff's RA-related symptoms.

Plaintiff cites to several portions of the record that could have supported additional limitations, but this does not change the result. While the record may contain evidence of more severe physical limitations—relating to her manipulative capabilities or otherwise—and although she would interpret the evidence differently, the Court finds the ALJ's determination was well within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that, as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence

supports the ALJ's findings."). Substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton*, 246 F.3d at 772.

Plaintiff has not established a cause for remand based on the ALJ's decision to not obtain additional evidence from a medical expert.

**B.    The ALJ's Evaluation of Plaintiff's Symptoms and Her Subjective Statements as to their Severity**

Plaintiff contends the ALJ ignored the Appeals Council's remand order by failing to properly evaluate her symptoms. She claims that the ALJ devoted a "single brief paragraph" to explain why he found her statements regarding the intensity and limiting effects of her impairments to be not entirely consistent with the evidence and that he relied on mischaracterizations and improper inferences [Doc. 16 p. 14]. Specifically, Plaintiff argues that the ALJ relied too heavily on imaging evidence showing no significant abnormalities or only mild degenerative changes and that he did not rely enough on statements from her and her providers repeatedly endorsing pain, stiffness, and other symptoms. She also asserts the ALJ did not properly consider her fibromyalgia and how it may have exacerbated her other impairments. Plaintiff again states that the ALJ relied too heavily on the fact that her medication may have helped control her pain and other symptoms and that he made improper inferences as to how her reported daily activities translate to her capacity to perform typical work functions. She also argues the ALJ improperly considered the symptoms stemming from her mental impairments.

The Commissioner contends the ALJ properly considered Plaintiff's alleged symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record [Doc. 18 p. 14]. Furthermore, the Commissioner asserts the ALJ appropriately found her statements concerning the intensity, persistence, and limiting

effects of her symptoms were not entirely consistent with the record of evidence. As already alluded to above, the Court finds the ALJ properly considered Plaintiff's symptoms and her subjective statements regarding their severity, and substantial evidence supports this determination.

A claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). In addition,

> [t]he social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (S.S.A. Oct. 25, 2017) (effective March 28, 2016). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p; *see also Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.*, No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p).

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;
>
> (v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;
>
> (vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and
>
> (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

18

20 C.F.R. §§ 404.1529, 416.929. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In his decision, the ALJ found that Plaintiff's

> medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .

19

[Tr. 740].  The Court finds substantial evidence supports the ALJ's decision.  The ALJ properly considered, among other things, the objective medical evidence, the opinion evidence and prior administrative medical findings, Plaintiff's treatment history and improvement on medications, and her reported daily activities.

### 1.    Objective Medical Evidence

The ALJ specifically considered the objective medical evidence, which he found was not entirely consistent with the alleged severity of Plaintiff's impairments.  *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work.").  The Court finds the ALJ appropriately considered the inconsistencies between Plaintiff's subjective statements and the objective medical evidence when discounting her allegations concerning the severity of her alleged impairments.  *See, e.g.*, *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record."); *see also supra* § (A)(1) (Discussing ALJ's review of the objective medical evidence).

As to Plaintiff's physical impairments, the ALJ noted that 2018 x-rays of her hands showed no significant abnormalities, and x-rays of her feet, SI joints, and left knee and a 2016 MRI of her lumbar spine showed only mild degenerative changes [Tr. 740, 1802–08, 2004].  A 2010 examination showed a slightly reduced grip strength and synovitis and inflammation in both hands; however, examinations in February and July 2018 revealed no synovitis [*Id.* at 341, 736, 741, 1800, 1811].  With respect to her mental impairments, during a 2010 consultative psychological

20

examination, Plaintiff recalled her personal and medical history without difficulty, was oriented, had intact cognitive ability, and she displayed normal thought processes [*Id.* at 360, 738, 740]. From December 2013 through September 2015, she regularly had normal mental status examinations where she was alert and oriented, displayed appropriate mood and affect, was cooperative, had intact memory, and displayed good judgment and insight [*Id.* at 737, 1604, 1607, 1610, 1613, 1618, 1624, 1628–29, 1632, 1636, 1640]. The ALJ extensively discussed the objective medical evidence relating to Plaintiff's physical and mental impairments, and the Court finds it was appropriate for him to rely on that evidence when assessing Plaintiff's symptoms.

### 2.  Medical Opinions and Prior Administrative Medical Findings

The Court finds the ALJ's evaluation of the opinion evidence was appropriate in this case. As stated above, the Court provides more detailed findings regarding the ALJ's evaluation of the opinion evidence later in the opinion [*see infra* § (C)]. The ALJ properly considered Dr. Uzzle's 2010 consultative opinion; the opinions of state agency physicians Drs. Cohn and Settle; and the 2014 opinions of state agency physicians Drs. Curtsinger and Thrush.

As will be discussed in detail, the ALJ appropriately assessed the opinion evidence in this case, and it was appropriate for him to rely upon it, in combination with the other aspects of the record, to assess Plaintiff's symptoms and their alleged severity.

### 3.  Plaintiff's Treatment History and Improvement with Medications

Additionally, the ALJ appropriately considered Plaintiff's treatment history and the fact that she improved on medications, which were inconsistent with the alleged severity of her impairments. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv)–(v), 416.929(c)(3)(iv)–(v) (directing consideration of the effect of a claimant's medication and treatment when considering the severity of alleged symptoms); *Smith v. Comm'r of Soc. Sec. Admin.* 564 F. App'x 758, 763 (6th Cir. 2014)

21

(explaining that improvement with use of prescription medication supports denial of disability benefits); *Hardaway v. Sec'y*, 823 F.2d 922, 927 (6th Cir. 1987) (explaining that evidence medical issues can be improved when using prescribed drugs supports denial of disability benefits).

The Court has already discussed Plaintiff's treatment history and her improvement on medications and finds they were appropriate factors for the ALJ to consider in evaluating Plaintiff's symptoms related to her physical impairments and her corresponding subjective statements regarding their severity. *See supra* §§ (A)(2), (3). The Court adds that, with respect to her mental impairments, the ALJ considered that her primary care provider noted throughout several treatment records that she expressed feeling only a "mild" degree of depression, and she received no formal mental health treatment [Tr. 737, 740, 1599, 1603, 1606, 1612, 1615]. Moreover, she indicated on many occasions that her medications were helping alleviate and/or control her pain, and her providers noted that she continued to benefit from them [*Id.* at 736–37, 740]. The Court therefore finds the ALJ appropriately relied on Plaintiff's treatment records and the reports of her medication helping manage her symptoms when assessing her limitations.

### 4. Plaintiff's Reported Daily Activities

The ALJ also considered Plaintiff's reported daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (directing consideration of a claimant's daily activities when considering the severity of alleged symptoms). As previously noted [*see supra* § (A)(4)], she reported preparing meals, performing chores, washing clothes, attending to her personal hygiene, using a computer, and working from home [Tr. 736–37, 740]. Regarding Plaintiff working during the relevant period, the ALJ is expressly permitted to consider a claimant's work history. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) ("We will consider all of the evidence presented, including information about your prior work record."). Here, she worked during the

22

relevant period, and under the SSA's rules, it was appropriate for the ALJ to consider that in his decision. *See Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("ALJ did not err by considering [the claimant's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled."); 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

However, Plaintiff argues the ALJ failed to consider that she was working part time and under accommodations [Doc. 16 p 16]. The Court finds this argument is stymied by the fact that, in his decision, the ALJ specifically alluded to her testimony pertaining to her part-time work, the number of days and hours she worked, and the accommodations she was working under [Tr. 739–40]. In any case, an activity may still be inconsistent with alleged symptoms even if the claimant alleges it was performed in a limited or accommodated manner. *See Rottmann v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 195 (6th Cir. 2020).

The Court finds the ALJ appropriately evaluated Plaintiff's symptoms and her subjective statements regarding their alleged severity and limiting effects. The ALJ engaged in an extensive review of the record and expressly considered, among other things, the objective medical evidence, the medical opinions and prior administrative medical findings, her treatment history and the effectiveness of her medications, and her reported daily activities. All of these were appropriate factors for him to consider in finding that her statements concerning the severity of her symptoms were not entirely consistent with the record of evidence. As substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms, the Court finds this is not a valid basis for reversing the Commissioner's decision.

## C. ALJ's Evaluation of the Opinion Evidence and Prior Administrative Medical Findings

Plaintiff asserts that the ALJ failed to properly assess the opinion evidence and prior administrative medical findings in this case because he relied on "cherry-picking and flawed inferences" [Doc. 26 p. 17]. Specifically, she claims he omitted any mention of the significant upper extremity limitations from Dr. Uzzle's opinion despite affording it "some weight" [*Id.*]. She argues that the ALJ "simply evaded the issue" and implied that he accepted any limitations that Dr. Uzzle found only to the extent they were consistent with subsequent findings [*Id.*].

Plaintiff also takes issue with the ALJ's assigning little weight to the opinion of psychological consultative examiner Tracy L. Allred, Ed.D. ("Dr. Allred"), and great weight to the opinion of psychological consultative examiner William Kenney, Ph.D. ("Dr. Kenney") [*Id.* at 17–18]. She states the ALJ failed to explain why Dr. Kenney's assessment was found to be more consistent with the evidence or how it was materially different from Dr. Allred's despite both endorsing significant limitations in social interaction, concentration and attention, and adaptation, even though "Dr. Allred endorsed somewhat greater limitations in terms of the labels she chose" [*Id.* at 18 (citing Tr. 359–62, 1378–81)]. In any case, she asserts the ALJ again relied on improper inferences from her non-work-related functioning to undermine further limitations when evaluating the opinion evidence [*Id.*].

The Court finds the ALJ appropriately evaluated and considered the medical opinions and prior administrative medical findings in this case, and it was proper to rely on them as part of his decision. A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. §§ 404.1513(a)(2), 415.913(a)(2). In considering a claim

24

of disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight."   20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1).[3]   However, a treating physician's opinion as to the nature and severity of an impairment must be given "controlling weight" only if it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record.  *Id.* §§ 404.1527(c)(2), 416.927(c)(2).   When an opinion does not garner controlling weight, the appropriate weight to be given to the opinion will be determined based upon the length of treatment, frequency of examinations, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

The ALJ is not required to explain how he considered each of these factors but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight.  *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight") (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2))].

---

[3]      The treating physician rule has been abrogated as to claims filed on or after March 27, 2017.  *See* 20 C.F.R. §§ 404.1520c; 416.920c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017).  The new regulations eliminate the term "treating source," as well as what is customarily known as the treating physician rule.  As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies.  *See id.* § 404.1527.

However, the ALJ is not required to give "good" reasons for the weight given to non-treating physician opinions. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Regardless, the ALJ did explain the reasoning behind the weight he afforded to the several opinions contained in the record in this case.

The bulk of the Court's analysis focuses on the specific opinions Plaintiff refers to in her argument, specifically those of Drs. Uzzle, Allred, and Kenney. However, the Court notes there are several other opinions and prior administrative medical findings contained within the administrative record, and the Court finds that, as Plaintiff has not specifically argued they were improperly evaluated, and the ALJ appropriately relied on them in his decision to the extent he found them persuasive.[4]

### 1. Dr. Uzzle's Opinion

In July 2010, Dr. Uzzle consultatively examined Plaintiff and opined that she would have some limitations and difficulty in using her hands for manual tasks; may have some difficulty with prolonged standing and walking but could do a combination of sitting, standing, and walking in an eight-hour day; should be able to at least do light-level lifting and carrying of 20 pounds occasionally; and should be able to at least do occasional forward bending, twisting, and stooping

---

[4]    For example, the ALJ gave "some" weight to the opinion of state agency physician B. Rudnick, M.D., whose opinion was affirmed by state agency physician Frank D. Kupstas, Ph.D., as the opinions were consistent with the evidence indicating Plaintiff's depression was mild and her symptoms were stable [Tr. 741]. "Some" weight was afforded to the opinion of state agency physician Dr. Cohn, whose opinion was affirmed by state agency physician Dr. Settle, at least to the extent they were consistent with Plaintiff having no more than frequent limitations in the use of hand controls [*Id.*]. "Great" weight was given to the opinions of reviewing state agency physicians Drs. Curtsinger and Thrush, as they were consistent with the evidence of record [*Id.*]. The opinions of state agency psychological consultants Rebecca Sweeney, Ph.D., and Robert Paul, Ph.D., were afforded "great" weight, as they were consistent with treatment notes that Plaintiff's depression was mild and her symptoms were stable [*Id.*].

26

activities [Tr. 342, 740].  The ALJ afforded "some" weight to Dr. Uzzle's lifting/carrying limitations and occasional postural limitations, as they were consistent with treatment notes indicating she reported her medications helped with her RA and pain and with her reports that she could do chores and work from home [Tr. 740].  The ALJ noted that Dr. Uzzle was not privy to the complete record of evidence when forming his opinion, but he found the more recent treatment notes continued to support his opined limitations [Tr. 740].

Plaintiff states that Dr. Uzzle appears to be the only examining physician who provided "any semblance of a specific assessment regarding [her] limitations, and he assessed rather significant difficulties with manipulation" [Doc 16 p. 13].  She argues that, even if there was some noted relief with medication, there was no basis in the record for the ALJ to leap from Dr. Uzzle's assessment to a finding that she can frequently use her hands—as set forth in the RFC.  Plaintiff does note, however, that non-examining state agency consultants "somehow" determined shortly after Dr. Uzzle produced his report that, despite increasing pain in her hands, she would be able to frequently handle and finger and use hand controls [*Id.* (citing Tr. 463–71, 481)].  She argues that this contradictory evidence is, "at best, arbitrary, if not utterly inconsistent with Dr. Uzzle's assessment and the longitudinal treatment records of Drs. Kanagasegar and Choo" [*Id.* at 13–14].  Plaintiff alleges the ALJ therefore presented a skewed description of those treatment records and neglected to mention Dr. Uzzle's emphasis on her manipulative limitations, as he afforded "some weight" to his opinion but referred only to his assessment pertaining to lifting and carrying and postural limitations [*Id.* at 14 (citing Tr. 740)].  Plaintiff argues there is "no conceivable explanation or justification for the ALJ's failure to seek clarification regarding [her] functional limitations, even with some relief from medication" [*Id.*].  She asserts the record does not support the ALJ's determination that she was capable of frequent manipulation with her bilateral hands, as

evidenced by his allegedly flawed assessment of the opinion evidence, meaning there is no logical bridge between the facts of this case and the RFC.

The Court finds the ALJ properly evaluated Dr. Uzzle's consultative, non-treating opinion, as he explained why he afforded "some" weight to it—including that it was consistent with the objective medical evidence and with Plaintiff's statements concerning the effectiveness of her medications, and it was also supported by more recent medical evidence [Tr. 740]. The Court finds little merit in Plaintiff's argument that the ALJ ignored Dr. Uzzle's "significant upper extremity limitations" [Doc. 16 p. 17]. The ALJ clearly stated that he gave weight to Dr. Uzzle's lifting/carrying limitations [Tr. 739–40]. Moreover, the RFC limits her to "light" work, which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and he further limited her to frequent pushing/pulling with bilateral upper extremities and frequent use of hand controls [*Id.*].

### 2. Dr. Allred's Opinion

In August 2010, Dr. Allred, a psychological consultant, examined Plaintiff and opined that she was not significantly limited in her ability to understand and remember; moderately limited in her social interaction abilities; and moderately to markedly limited in her ability to sustain concentration and persistence and her ability to adapt and tolerate stress [*Id.* at 362, 740]. The ALJ afforded "little" weight to Dr. Allred's opinion that she possibly had marked limitations in concentration and adaption, as he found the opinion was inconsistent with the evidence in that regard [*Id.* at 740]. The ALJ directly addressed these inconsistencies by citing to examples, including that Plaintiff stated in her function report she could concentrate for "hours" and completed tasks she started [*Id.* at 740, 1220–24]. She also reported she could care for her personal hygiene, prepare meals, do light household chores, manage her own money, and pay bills [*Id.*].

28

The ALJ did, however, afford "some" weight to the remainder of Dr. Allred's opinion [*Id.*]. The Court finds the ALJ sufficiently explained how he evaluated Dr. Allred's consultative opinion. This included his decision to give little weight to the part of the opinion describing Plaintiff as having "marked limitations" in concentration and adaption, as the ALJ found such a finding was inconsistent with the evidence of record, including her own statements regarding the extent of her functional abilities [*Id.*].

While it is less clear why the ALJ afforded "some" weight to the remainder of Dr. Allred's opinion, the Court finds it can still logically track his reasoning for doing so. The ALJ reviewed Dr. Allred's examination findings, including that Plaintiff could recall her personal and medical history without difficulty, that she had normal thought process, and that she had intact cognitive ability [*Id.*]. Moreover, Plaintiff reported to Dr. Allred that she got along well with others, and she used a computer—in addition to the previously mentioned daily activities [*Id.*]. It is clear the ALJ found this evidence supported the remainder of Dr. Allred's opinion, specifically to the part indicating she was not significantly limited in her ability to understand and remember and only moderately limited in social interaction [Tr. 362, 741]. The Court finds the ALJ's evaluation of Dr. Allred's consultative psychological opinion was appropriate in this case.

### 3. Dr. Kenney's Opinion

In October 2014, another psychological consultant, Dr. Kenney, examined Plaintiff and opined that she had no significant limitations in her ability to understand and remember; mild to moderate limitations in concentration and persistence; and moderate limitations in social interaction and adaptation [*Id.* at 741, 1380]. The ALJ gave "great" weight to Dr. Kenney's opinion because it was "more consistent with the evidence of record such as the treatment notes in which [Plaintiff's] depression was characterized as mild and that her symptoms were stable" [*Id.*

29

at 741]. Additionally, he found Dr. Kenney's opinion was consistent with her ability to recall her personal and medical history without any difficulty during both psychological consultative exams and with her reports that she got along with others, could pay attention for hours, and could manage her activities of daily living [*Id.*]. The Court finds the ALJ adequately explained why he gave "great" weight to Dr. Kenney's opinion, specifically because it was consistent with the objective medical evidence, with Plaintiff's reported daily activities, and with the overall record.

Plaintiff's contention that the ALJ failed to explain why he afforded more weight to Dr. Kenney's opinion relative to Dr. Allred's is not persuasive. She suggests that the only difference between the two opinions is that Dr. Allred "endorsed somewhat greater limitations in terms of the labels she chose" [Doc. 16 p. 19]. This argument is misleading because the "labels" she refers to are the opined levels of functioning, and the difference between the "moderate" limitations set out in Dr. Kenney's opinion and the "marked" limitations in Dr. Allred's opinion is significant in the disability context. A claimant with a "marked" limitation has functioning on a sustained basis that is "seriously limited," whereas a "moderate" limitation means the claimant's functioning on a sustained basis is "fair." *See* 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00F2. Moreover, the ALJ adequately explained why he found Dr. Allred's "marked" limitations inconsistent, and he provided appropriate examples from the record for this finding [Tr. 740].

### D. The ALJ's RFC Finding and Consideration of Plaintiff's Combined Impairments

Plaintiff realleges that the ALJ conducted a flawed and unsupported assessment of the medical record and her subjective statements, resulting in a final RFC that does not account for all her limitations when they are considered in combination. Specifically, she claims the ALJ failed to consider any exacerbating effects on her functional capacity that arose out of her morbid obesity.

30

Plaintiff asserts that the ALJ's "boilerplate statement" at Step Three that he considered her morbid obesity, as required by Social Security Ruling 19-2p, does not actually indicate that he considered it [Doc. 16 pp. 19–20 (citing Tr. 737)].  Plaintiff says that, for example, in July 2010, Dr. Uzzle noted her "significant obesity" limited his examination of her joints, but he could still detect synovitis and inflammation, primarily in her hands [*Id.* at 13 (citing Tr. 340–42)].  Dr. Uzzle assessed her with obesity, depression, and RA, and he noted symptoms of morning stiffness and aching, chronic fatigue, limited use of the hands for manual skills, limited range of motion in the knees, and mild weakness and grip strength bilaterally [*Id.* (citing same)].  Plaintiff was notably deconditioned, and he opined she would have limitations and difficulty using her hands, difficulty with prolonged standing and walking, would occasionally be able to do light-level lifting and carrying twenty (20) pounds, and occasional postural activities [*Id.* (citing same)].

The Commissioner argues that Plaintiff's assertion is without merit because the ALJ specifically noted that, in accordance with SSR 19-2p, he considered "the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the working environment" [Doc 18 p. 24 (citing Tr. 737)].

Both the parties and the ALJ have referred to SSR 19-2p as the applicable standard, so the Court uses it to frame its analysis.[5]  SSR 19-2p requires an ALJ to "consider the limiting effects

---

[5]     It is unclear what standard should have been applied in this case.  It is undisputed that SSR 02-1p was rescinded effective May 20, 2019, and that it was replaced with SSR 19-2p.  SSR 19-2p provides: "We will apply this notice on May 20, 2019."  2019 WL 261798, at *5 n.14 (May 20, 2019).  It is not entirely clear whether the effective date for SSR 19-2p applies only to *applications* filed after May 20, 2019, or to all *decisions* rendered after that date.  *Heck v. Comm'r of Soc. Sec. Admin.*, No. 1:20CV2133, 2021 WL 6693720, at *9 (N.D. Ohio Dec. 28, 2021).  In this case, Plaintiff filed her initial application on April 27, 2010 [Tr. 76, 106, 148–57], and her application was most recently denied on February 26, 2020 [*Id.* at 729–51].  "If the effective date applies to new applications only, the applicable SSR here is SSR 02-1p.  In contrast, if the effective date applies to all subsequent decisions, the applicable SSR is 19-2p."  *Heck*, 2021 WL 6693720, at *9.

31

of obesity when assessing a person's RFC." 2019 WL 261798, at *4.  The Ruling notes that "the combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately" and requires ALJs to "explain how [they] reached [their] conclusion on whether obesity causes any limitations." *Id.*  "SSR 19-2p only requires that obesity be considered and that the conclusion reached regarding its effects be explained." *Montagna v. Kijakazi*, No. 20-1227-TMP, 2022 WL 565601, at *4 (W.D. Tenn. Feb. 24, 2022).  Ultimately, "[a]n ALJ's explicit discussion of the plaintiff's obesity indicates sufficient consideration of [her] obesity." *Swafford v. Berryhill*, No. 1:18-CV-5, 2019 WL 1332368, at *3 (E.D. Tenn. Mar. 25, 2019) (citing *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 443 (6th Cir. 2010)).

Here, the ALJ explicitly noted that Plaintiff is morbidly obese with a body mass index of greater than 40 [Tr. 737, 1817].  The ALJ continued "[i]n accordance with SSR 19-2p, the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform movement and necessary physical activity within the working environment" [*Id.* at 737].  While the discussion of her obesity could have been more substantial, the Court finds the ALJ has met his obligation to consider obesity and the exacerbating effects it may have had on her other impairments.  More detail was not required under the agency's rules for considering obesity.

---

Regardless, the Court need not decide this matter because (1) Plaintiff has not raised this issue, *see Swain v. Comm'r of Soc. Sec.*, 379 F. App'x 512, 517 (6th Cir. 2010) (issues not raised are forfeited); and (2) SSR 02-1p and SSR 19-2p are generally the same with respect to how an ALJ should consider obesity at Step Four.  *Smith v. Comm'r of Soc. Sec.*, No. 1:20-cv-1366, 2021 WL 3566695, at *11 n.7 (N.D. Ohio May 28, 2021).

On a final note, Plaintiff takes issue with the ALJ's assessment of her mental impairments. She argues that the ALJ falsely characterized her mental status examinations as being normal and that he made numerous false inferences about her mental impairments, suggesting that they were so mild as to have only a minimal effect on her functioning [Doc. 16 p. 20–21]. And Plaintiff again disputes the ALJ's reliance on her reported daily activities [*Id.* at 21]. The Court finds the ALJ's assessment of her mental impairments is not as limited as she alleges. As has been extensively discussed, the ALJ appropriately evaluated the evidence of record when evaluating Plaintiff's physical and mental impairments. Moreover, her mental status examinations with her primary care provider were consistently normal [Tr. 737, 1604, 1607, 1610, 1613, 1618, 1624, 1628-29, 1632, 1636, 1640]. And while the ALJ certainly *did* rely on Plaintiff's reported daily activities when evaluating her impairments, which is an appropriate factor to consider, that was far from the *only* factor the ALJ discussed. Here, the ALJ appropriately considered the objective medical evidence, the medical opinions, her treatment history and the effectiveness of her medications, and her reported daily activities—including the fact that she worked, albeit on a part-time basis under accommodations, during the relevant period.

Plaintiff has not presented a valid basis for reversing the Commissioner's final decision or remanding her claim, and the Court finds the ALJ's decision is supported by substantial evidence.

33

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for **Summary Judgment** [**Doc. 15**] will be **DENIED**, and the Commissioner's **Motion for Summary Judgment** [**Doc. 17**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Jill E. McCook
United States Magistrate Judge

34